IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00911-WYD-MJW

MICHAEL MILLIGAN,

Plaintiff,

v.

BILL REED,
NATHAN ALGIEN,
JOHN DOE, and
ENDRE SAMU,
        in their individual capacities,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (Docket No. 62)
and
ORDER ON MOTION REQUESTING FINDINGS OF FACT AND CONCLUSIONS OF
LAW ON THE DEFENDANT'S [sic] MOTION TO DISMISS (Docket No. 80)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

      This case is before the undersigned pursuant to an Order of Reference to

Magistrate Judge issued by District Judge Wiley Y. Daniel on July 9, 2007.  (Docket No.

49).

**<u>PLAINTIFF'S ALLEGATIONS</u>**

      The operative pleading is the Second Amended Prisoner Complaint (Docket No.

19) which is brought pursuant to 42 U.S.C. § 1983.  In that pleading, plaintiff

summarizes his case as follows:

> This is a civil rights complaint filed by a state prisoner incarcerated within the Colorado Department of Corrections ["CDOC"] against prison officials for the denial of state created due process in the reclassification and transfer of the Plaintiff in an act of retaliation for two formal complaints over conditions of confinement filed with the Associate Warden of the Fort Lyon Correctional Facility. And the placement of the plaintiff into an environment of known potential and substantial risk of injury and imminent danger, for exercising his First Amendment and Eighth Amendment rights to redress grievances. Further, for transfer and placement into another environment of known potential and substantial risk of injury and imminent danger for filing the original complaint in this action.

(Docket No. 19 at 4, ¶ 1).

More specifically, plaintiff asserts the following. On April 19, 2004, the plaintiff and other inmates sent the Associate Warden of Fort Lyon Correctional Facility ("FLCF") a formal written complaint regarding the proposed cancellation of the morning yard and weight pile by the new programs captain, "which raised safety and idel [sic] time concerns." (Docket No. 19 at 4, ¶ 3). The following week, on April 27, 2004, plaintiff and other inmates sent another formal written complaint to the Associate Warden regarding inmates organizing an Aryan Brotherhood chapter in the facility, and they gave notice that legal actions would be taken against the facility if it was not stopped. (Docket No. 19 at 5, ¶ 4).

Shortly thereafter, on May 5, 2006, defendant Reed sent a memo to Daryl Vigil and defendant Algien (at CDOC Offender Services) requesting that plaintiff be transferred, stating:

> Inmate Milligan is currently housed at [FLCF]. We have received some information that Inmate Milligan has attempted to create unrest among the other inmates at the facility. We have received two letters that we believe were written by inmate Milligan which I have attached to this letter. He has not done anything overt that would warrant a COPD, but I do not believe we can afford to wait until he does. This facility is poorly equipped and designed to manage this kind of inmate. I am requesting

that he be laterally transferred from this facility.

(Docket No. 19 at 5, ¶ 5).

Defendants Reed and Algiers circumvented the reclassification procedures in retaliation for plaintiff exercising his First Amendment rights. Plaintiff was transferred on May 20, 2004, to the Canon Transportation Unit where he was housed until his transfer on May 24, 2004, to Arkansas Valley Correctional Facility ("AVCF").

On May 16, 2006, plaintiff filed his original complaint in this action and sent an advisory copy to defendants Reed and Algien. In response, an unknown person from CDOC Offender Services (defendant "John Doe") had plaintiff transferred from a level three medium security facility to a level four close security facility, with plaintiff being classified as a minimum-restrictive custody level classification.

On June 6, 2006, plaintiff asked defendant Samu, Lou Archuleta, and Daryl Vigil for a facility transfer and protection from inmate Justin Pottberg. Nevertheless, Samu attempted to move plaintiff into general population with this other inmate, and plaintiff refused. Plaintiff was placed on pre-segregation status pending charges for disobeying a lawful order to move into general population on June 19, 2006. Samu filed a false charge stating he had thoroughly investigated and Justin Pottberg was not a justifiable custody issue for the plaintiff when it was documented in the plaintiff's files. Plaintiff was served with a Notice of Charges on June 23, 2006. A hearing was held on June 29, 2006, at which he was found not guilty of the charge.

Plaintiff raises the following seven claims: (1) due process violations under the Fourteenth Amendment as a result of the classification and transfer based upon Reed's circumvention of CDOC policies and Administrative Regulation 600-01 to retaliate

against plaintiff for the written complaints filed with the Associate Warden; (2) the transfer was in retaliation by Reed and Algien for the two written complaints sent by plaintiff and other prisoners, which was a protected act under the First Amendment; (3) deliberate indifference in violation of the Eighth Amendment by defendant Algian as a result of his transfer which placed plaintiff into an environment of potential and substantial risk of harm and imminent danger from violence at the hands of gang members who had threatened to kill plaintiff at AVCF nine and twenty-four months previously; (4) defendant John Doe transferred plaintiff to Limon Correctional Facility ("LCF") in retaliation for filing this action; (5) defendant John Doe's transfer of plaintiff to LCF constituted deliberate indifference in violation of the Eighth Amendment because Doe knew he was placing plaintiff into an environment of potential and substantial risk of harm and imminent danger from violence at the hands of a certain inmate gang member who was a documented custody issue for the plaintiff; (6) retaliation by defendant Samu when he wrote a false disciplinary charge against the plaintiff; and (7) deliberate indifference by defendant Samu when he forced plaintiff into general population with a certain inmate gang member with whom plaintiff had a documented custody issue.

Plaintiff seeks the following relief:

A.     Prospective relief in placing the Plaintiff back in the [FLCF] and reinstating his job, status quo, [and] privileges lost due to Defendants' retaliation.

B.     Declare Defendants' [sic] retaliated against Plaintiff, denied him proper due process and did place Plaintiff into environments in imminent danger in violation of his First, Eighth and Fourteenth Amendment rights.

C.     Award nominal damages.

D.     Award punitive damages.

E.    Award Plaintiff his reasonable costs, attorney fees and witness fees pursuant to 42 U.S.C. 1988, and;

F.    Grant such other and further relief as may be just and equitable.

(Docket No. 19 at 16).

## DEFENDANTS' MOTION TO DISMISS

Now before the court is the Defendants' Motion to Dismiss (Docket No. 62) and Memorandum Brief in Support of Defendants' Motion to Dismiss (Docket No. 63). Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the following grounds:  (1) plaintiff has no due process rights with respect to facility transfer and no right to be housed in a particular CDOC facility; (2) plaintiff's retaliation claim fails as a matter of law; (3) plaintiff's Eighth Amendment claim fails as a matter of law; (4) plaintiff fails to state a First Amendment claim; (5) plaintiff's claim for damages is barred by the Prison Litigation Reform Act ("PLRA") because he has not sustained a physical injury; (6) plaintiff's claims for declaratory and injunctive relief are moot; and (7) the CDOC employees are entitled to qualified immunity.

The court has reviewed the motion and the plaintiff's response thereto (Docket No. 68) and has considered applicable Federal Rules of Civil Procedure, case law, and statutes, as well as the court's file.  The court now being fulling informed makes the following findings, conclusions of law, and recommendation.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts are to be strictly construed.  *See F*

& *S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.  First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *See id.* at 1003.  A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp.</u>,

127 S. Ct. at 1974 (citations omitted). "Factual allegations must be enough to raise a

right to relief above the speculative level." <u>Id.</u> "[A] plaintiff must 'nudge [] [his] claims

across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .

Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts

in support of the pleaded claims is insufficient; the complaint must give the court reason

to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for

*these* claims." <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir.

2007) (quoting <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1974).

Since the plaintiff is not an attorney, his pleadings have been construed liberally

and held to a less stringent standard than formal pleadings drafted by lawyers. <u>See</u> <u>Hall</u>

<u>v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing <u>Haines v. Kerner</u>, 404 U.S. 519,

520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a

claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to

cite proper authority, his confusion of various legal theories, his poor syntax and

sentence construction, or his unfamiliarity with pleading requirements. . . . At the same

time, . . . it is [not] the proper function of the district court to assume the role of advocate

for the pro se litigant." <u>Id.</u>

**Due Process Claim**

Defendants first assert that the plaintiff has no due process rights with respect to

facility transfer and no right to be housed in a particular CDOC facility.

"The Fourteenth Amendment provides that no state shall 'deprive any person of

life, liberty, or property without due process of law.'" <u>Estate of DiMarco v. Wyoming</u>

<u>Dept. of Corrections</u>, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. Amend.

XIV). "A due process claim under the Fourteenth Amendment can only be maintained

where there exists a constitutionally cognizable liberty or property interest with which

the state has interfered." <u>Steffey v. Orman</u>, 461 F.3d 1218, 1221 (10th Cir. 2005)

(citation omitted).

"It is well established that lawfully incarcerated persons retain only a narrow

range of protected liberty interests . . ., and '[t]he Due Process Clause standing alone

confers no liberty interest in freedom from state action taken within the sentence

imposed.'" <u>Jordan v. Federal Bureau of Prisons</u>, 191 Fed. Appx. 639, 650 (10th Cir. July

25, 2006) (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 480 (1995)). In <u>Sandin v. Conner</u>,

the United States Supreme Court "redefined the scope of prisoner due process claims

and clarified the proper approach for their analysis." <u>Klein v. Coblentz</u>, 1997 WL

767538, *3 (10th Cir. Nov. 19, 1997). The Court noted in <u>Sandin</u> that although

> States may under certain circumstances create liberty interests which are
> protected by the Due Process Clause. . . . [Those] interests will be
> generally limited to freedom from restraint which, while not exceeding the
> sentence in such an unexpected manner as to give rise to protection by
> the Due Process Clause of its own force, . . . nonetheless imposes
> **atypical and significant hardship on the inmate in relation to the**
> **ordinary incidents of prison life**.

<u>Sandin</u>, 515 U.S. at 483-84 (emphasis added). Whether confinement "conditions

impose such an atypical and significant hardship that a liberty interest exists is a legal

determination . . . ." <u>Beverati v. Smith</u>, 120 F.3d 500, 503 (4th Cir. 1997) (citing <u>Sandin</u>,

515 U.S. at 485-87).

Here, plaintiff claims that certain defendants did not follow policies and

administrative regulations with respect to his classification and transfer to another

facility.  This court finds, however, that the plaintiff has not alleged facts which show that such actions by defendants imposed atypical and significant hardship in relation to the ordinary incidents of prison life.  It is well-established that an inmate has no justifiable expectation that he will be incarcerated in any particular prison,  Olim v. Wakinekona, 461 U.S. 238, 245 (1983), and does not have a constitutionally recognized liberty interest in his security classification or placement.  See Hewitt v. Helms, 459 U.S. 460, 468 (1983) ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); Meachum v. Fano, 427 U.S. 215, 228 (1976) ("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or no reason at all.").  "That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules."  Meachum v. Fano, 427 U.S. at 225.

Based on the above, it is recommended that plaintiff's first claim for relief, his due process claim, be dismissed.

**Retaliation and First Amendment Claims**

Defendants next contend that the plaintiff's retaliation claim fails as a matter of law.  More specifically, they assert in pertinent part:

> Here, Milligan's allegations of retaliation associated with his facility transfers are completely unsupported.  Indeed, the complaint and attachments thereto indicate the exact opposite.  When Milligan

complained of safety concerns at FLCF he was laterally transferred to another Level III facility, AVCF. When he again raised safety concerns at AVCF, he was again transferred. These allegations fail as a matter of law to support a claim of retaliation. Moreover, even when assuming *arguendo* that Milligan was transferred as a result of his complaints relating to safety at FLCF, this is still insufficient to state a claim. . . . Thus, it is acceptable to transfer an inmate to give the staff a break from a constant barrage of grievances. . . . It is also acceptable to transfer an inmate who is "litigious," that is, one who files frivolous lawsuits. . . .

To the extent Milligan seeks damages for the alleged retaliation associated with his COPD proceeding, his claim is equally meritless. Civil rights actions may not be brought to redress *de minimis* violations of constitutional rights. . . . An inmate may only bring an action to redress conduct that "will inevitably affect" the duration of his confinement or that amounts to a significant deprivation of a federally-protected right. . . . Therefore, judicial review of a prison disciplinary hearing is allowed only if the discipline "will inevitably affect" the duration of confinement or if it imposes an "atypical and significant hardship in relation to the ordinary incidents of prison life." . . . Here, Milligan was found not guilty at the COPD proceeding. Thus, no sanctions whatsoever were imposed.

Finally, any civil rights claim for damages requires proof of actual injury in fact to a legally protected interest. . . . Where there is no injury, no damages can be proven. . . . "A damages award must be based on actual injuries.

. . .

As noted in the Second Amended Complaint, while at FLCF Milligan attempted to create unrest among other inmates and further complained of gang activity at the facility. CDOC noted that FLCF is not equipped to deal with the problems Milligan was creating with the inmate population and took action to transfer Milligan before additional problems and facility disruption occurred. His claims that this somehow violated his constitutional rights simply fails to state a claim.

(Docket No. 63 at 7-8, 12) (citations omitted).

Prison officials do not have unbridled discretion to punish an inmate because of

his exercise of his First Amendment rights. The Tenth Circuit has "held that prison

officials may not retaliate against or harass an inmate in retaliation for the inmate's

exercise of his constitutional rights. . . . 'This principle applies even where the action taken in retaliation would be otherwise permissible.' . . . To prevail, [however,] a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." Baughman v. Saffle, 24 Fed.Appx. 845, 2001 WL 1241329, *2 (10th Cir. Oct. 17, 2001) (citing Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998); Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990)). "Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because [he] has engaged in protected activity." Bell v. Pollack, 2008 WL 652324, *4 (D. Colo. Mar. 10, 2008) (citing Peterson v. Shanks, 149 F.3d at 1144.

**Transfer After Submitting Formal Complaints.**  In his second claim for relief, plaintiff asserts that his transfer out of FLCF was in retaliation by Reed and Algien for the two written complaints sent by plaintiff and other prisoners, which he alleges was a protected act under the First Amendment.  While the U.S. Supreme Court "has determined that incarceration does not divest prisoners of all constitutional protections" such as "certain protections of the First Amendment," Shaw v. Murphy, 532 U.S. 223, 228-29 (2001), the Court has "maintained that the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large.  In the First Amendment context, for instance, some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system' . . . ." Id. at 229.

Here, plaintiff avers in his pleading that after he and other inmates sent two formal written complaints to the FLCF Associate Warden, defendant Reed sent a memo

to Daryl Vigil and defendant Algien in which Reed stated that they had "received some information that [plaintiff] has attempted to create unrest among the other inmates at the facility. . . . He has not done anything overt that would warrant a COPD, but I do not believe we can afford to wait until he does. This facility is poorly equipped and designed to manage this kind of inmate. I am requesting that he be laterally transferred from this facility." (Docket No. 19 at 5, ¶ 5).

This court finds that the plaintiff has not stated a First Amendment claim. The corrections officials construed plaintiff's actions as an attempt to create unrest among other inmates, something they believed FLCF was not equipped to deal with and thus transferred plaintiff before before additional problems and facility disruption occurred. As found by the Supreme Court, prisoners' "First Amendment associational rights . . . must give way to the reasonable considerations of penal management. . . . They may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations, whether through group meetings or otherwise possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment." Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 132 (1977). "The interest in preserving order and authority in the prisons is self-evident. Prison life, and relations between the inmates themselves and between the inmates and prison officials or staff, contain the ever-present potential for violent confrontation and conflagration. . . . Responsible prison officials must be permitted to take reasonable steps to forestall such a threat, and they must be permitted to act before the time when they can compile a dossier on the eve of a riot." Id. Therefore, this court recommends that the retaliation

claim regarding plaintiff's first transfer (claim two of the Second Amended Prisoner Complaint) be dismissed.  See Beierle v. Zavares, 2000 WL 757725, *6 (10th Cir. June 12, 2000) (Plaintiff's retaliation claims were conclusory and thus may be subject to dismissal upon the defendants filing of a motion to dismiss or properly-supported summary judgment motion.).

**False Disciplinary Charge.**  In his sixth claim for relief, plaintiff contends that after he petitioned prison officials and defendant Samu with letters, a grievance, and talking directly with Samu about being placed with a custody issue inmate and requesting safety, defendant Samu retaliated by writing a false disciplinary charge against the plaintiff.  This court finds that dismissal of this claim at this stage of this litigation is not appropriate because plaintiff has adequately stated a claim for relief.  See Zarska v. Higgins, 2006 WL 689449, *4 (10th Cir. Mar. 20, 2006) ("[W]e hold that Sergeant Higgins' alleged filing of disciplinary proceedings to retaliate for a report of misconduct would chill a person of ordinary firmness from continuing to engage in that activity. . . .  Considering the level of control that prison officials have over inmates' lives, retaliation is not to be taken lightly.  Sergeant Higgins' alleged pursuit of a baseless disciplinary charge should not be ignored simply because the charge was later dismissed at the disciplinary hearing.  There is, after all, no guarantee that a baseless charge will always be dismissed.  But even if the disciplinary charge had not been baseless, there is an implicit threat in the filing of a valid charge for retaliatory reasons that would chill further action.  Pursuing disciplinary proceedings against a prisoner as punishment for a prisoner's exercise of his or her constitutionally protected rights, is not allowed.") (quotation and citation omitted).

**Eighth Amendment Claims**

Plaintiff raises Eighth Amendment claims against named defendants in claims three and seven.  In claim three, plaintiff alleges deliberate indifference by defendant Algian when he transferred plaintiff to AVCF in May 2004 knowing that he was placing plaintiff "into an environment of potential and substantial risk of harm and imminent danger from violence at the hands of white supremist [sic] prison gang members who had threatened to kill the Plaintiff at the [AVCF] nine and twenty-four months prior at the facility.  Which was fully documented in the Plaintiff's files at the time he transferred the Plaintiff."  (Docket No. 19 at 9).  In claim seven, plaintiff alleges deliberate indifference by defendant Samu on June 19, 2006, when he attempted to force plaintiff into general population with a certain inmate gang member with whom Samu knew plaintiff had a documented custody issue.  When plaintiff refused, Samu had plaintiff placed in segregation pending a disciplinary charge for disobeying an lawful order.

Defendants contend that the plaintiff's Eighth Amendment claim fails as a matter of law, asserting:

> Here, Milligan completely fails to meet any of the elements necessary to proceeded [sic] with his claim.  The attachments to the Complaint indicate that whenever Milligan raised safety concerns with prison administrators, he was immediately transferred.  (See Grievances attached to Complaint, Doc. #3, at pp. 17-21).  Indeed, in response to Milligan's Informal Resolution Attempt, which constitutes the first step in the grievance procedure the CDOC responded:
>
>> Mr. Milligan, the Department of Corrections takes every issue, in regards to safety of offenders, very seriously.  You are being transferred to another Level III facility other than AVCF.  Your claim of being moved has been granted.
>
> (See Complaint Doc #25 at pp. 12-14).  Moreover, when he complained after being transferred from AVCF to LCF, his complaints were

investigated by both LCF and CDOC Headquarters. (See Doc. # 25, pp. 21-24). Accordingly, his Eighth Amendment claim is frivolous and should be dismissed.

(Docket No. 63 at 10).

"'[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners.' . . . '[T]he failure to protect inmates from attacks by other inmates may rise to an Eighth Amendment violation if the prison officials [sic] conduct amounts to an obdurate and wanton disregard for the inmate's safety.'" MacKay v. Farnsworth, 48 F.3d 491, 492 (10th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825 (1994); Northington v. Jackson, 973 F.2d 1518, 1525 (10th Cir. 1992)). It is well-established that the prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "This subjective standard requires a culpable state of mind on the part of the official. . . . It is not satisfied by negligence (which, by definition, is an unreasonable act or omission), or even gross negligence, or recklessness as defined by civil law." Brigden v. State ex rel. Oklahoma Dept. of Corrections, 129 F.3d 130 (Table), 1997 WL 686674, *6 (10th Cir. Oct. 29, 1997) (citing Farmer, 511 U.S. at 836). Significantly, "it is not necessary for the plaintiff to suffer an actual assault before obtaining relief under [this] standard." Merritt v. Hawk, 153 F. Supp.2d 1216, 1226 (D. Colo. 2001) (citing Farmer, 511 U.S. at 845).

Using this standard, this court finds that at this stage in the litigation, plaintiff has stated Eighth Amendment claims in claims three and seven that withstand the motion to dismiss. Plaintiff has "plead 'enough facts to state a claim to relief that is plausible on

its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008).

**Claim for Damages**

Defendants' next argument is that the plaintiff's claim for damages is barred by

the PLRA because he has not sustained a physical injury.

Section 1997e(e) of Title 42 United States Code provides that "[n]o Federal civil

action may be brought by a prisoner confined in a jail, prison, or other correctional

facility, for mental or emotional injury suffered while in custody without a prior showing

of physical injury."  42 U.S.C. § 1997e(e).  The Tenth Circuit has held that

> [t]he plain language of the statute does not permit alteration of its clear
> damages restrictions on the basis of the underlying rights being asserted.
> The underlying substantive violation . . . should not be divorced from the
> resulting injury, such as "mental or emotional injury," thus avoiding the
> clear mandate of § 1997e(e).  The statute limits the remedies available,
> regardless of the rights asserted, if the only injuries are mental or
> emotional.

Searles v. VanBebber, 251 F.3d 869, 876 (10th Cir. 2001), cert. denied, 536 U.S. 904

(2002).

In this case, because plaintiff has not alleged any physical injury, he is unable to

recover compensatory damages pursuant to 42 U.S.C. § 1997e(e).  See Tribe v.

Snipes, 2001 WL 1141317, *1 (6th Cir. Sept. 17, 2001) (Inmate's stress, which

inmate said could cause him to have a heart attack, chest pains, and a cold, numb

left arm did not constitute a physical injury for purposes of § 1997e(e)); Pruitt v.

Simmons, 1997 WL 689509 (10th Cir. Oct. 23, 1997) (District court did not err by

dismissing plaintiff's damages claims based upon prisoner's allegations that

defendants caused him extreme fear, stress, and terror.); Todd v. Graves, 217 F.

Supp.2d 958, 960 (S.D. Iowa 2002) (Inmate alleged that the stress induced by the

defendants' actions elevated his blood pressure to an unspecified level, aggravated his hypertension, and that he now suffered from dizziness, insomnia, and loss of appetite. The court noted "these are all symptoms typically associated with people suffering stress or mental distress. Prison itself is a stressful environment. If the symptoms alleged by [plaintiff] were enough to satisfy the physical injury requirement of 42 U.S.C. § 1997e(e), very few plaintiffs would be barred by the physical injury rule from seeking compensation on claims for emotional distress. The court has no basis upon which to conclude that result was intended by Congress."); Foster v. Captain, York County Jail, 2002 WL 14425, *2 (D. Me. Jan. 4, 2002) (While inmate complained of poor sleep and an upset stomach, he did not allege that he suffered actual physical injury as a result of the defendant's conduct, and thus the complaint was subject to dismissal pursuant to § 1997e(e)); Turner v. Schultz, 130 F. Supp.2d 1216, 1222-23 (D. Colo. 2001) (Prisoner's claims were barred by § 1997e(e) because he alleged that defendants' actions caused him "severe emotional stress and loss of enjoyment of life," but he did not assert any physical injury connected with the defendants' actions.); Cannon v. Burkybile, 2000 WL 1409852 (N.D. Ill. Sept. 25, 2000) (Inmate's allegations that he suffered headaches, insomnia, stress, and stomach anxiety did not sufficiently meet the physical injury requirement under § 1997e(e)); McGrath v. Johnson, 67 F. Supp.2d 499 (E.D. Pa. Sept. 24, 1999) (Inmate's assertion that alleged constitutional violations caused an emotional trauma which manifested itself by causing a preexisting skin condition to become inflamed did not satisfy § 1997e(e)), aff'd, 2002 WL 1271713 (3d Cir. May 24, 2002); Cain v. Commonwealth of Va., 982 F. Supp.

1132, 1135 n.3 (E.D. Va. 1997) (Inmate's complaints of depression, unbearable headaches causing vision loss and requiring pain medication, numbness, joint and back pain, black-outs, and stomach cramps and being subject to public embarrassment and humiliation which increased the pain and suffering did not constitute physical injury within scope of § 1997e(e)); Pinkston-Bey v. DeTella, 1997 WL 158343, *3 (N.D. Ill. Mar. 31, 1997) (severe headaches not physical injury)). Plaintiff, however, does not expressly seek compensatory damages in the Second Amended Prisoner Complaint (Docket No. 19).

Plaintiff does, however, expressly seek nominal and punitive damages. Unlike compensatory damages, § 1997e(e) does not bar recovery of nominal or punitive damages for a constitutional violation in the absence of a showing of physical injury. Searles, 251 F.3d at 879, 881. "[A]n award of nominal damages is mandatory upon a finding of a constitutional violation . . . ." Id. at 879. Furthermore, "as a general rule, punitive damages may be recovered for constitutional violations without a showing a compensable injury." Id. at 880. To obtain punitive damages under § 1983, plaintiff must show that defendants' conduct was "'motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference to the federally protected rights of others.'" Id. (quoting Smith v. Wade, 561 U.S. 30, 56 (1983)). Therefore, to the extent plaintiff's Second Amended Prisoner Complaint seeks punitive and nominal damages, it survives the motion to dismiss.

### Claim for Declaratory and Injunctive Relief

As stated above, plaintiff seeks "[p]rospective relief in placing the Plaintiff back in the [FLCF] and reinstating his job, status quo, [and] privileges lost due to Defendants'

retaliation" and "[d]eclare Defendants' [sic] retaliated against Plaintiff, denied him proper due process and did place Plaintiff into environments in imminent danger in violation of his First, Eighth and Fourteenth Amendment rights." (Docket No. 19 at 16). Defendants assert that the plaintiff's claims for declaratory and injunctive relief are moot. They note that plaintiff is no longer housed at AVCF or LCF, and he does not have contact with any of the CDOC employees. See Green v. Branson, 108 F.3d 1296, 1300 (10th Cir. 1997) (inmate's claims for injunctive and declaratory relief as to the conduct of prison officials becomes moot if the inmate is no longer within the control of the prison). "An inmate's transfer from a prison generally moots claims for declaratory and injunctive relief related to conditions of confinement." Mitchell v. Estrada, 225 Fed. Appx. 737, 741 (10th Cir. Feb. 15, 2007). Under the specific circumstances alleged here, however, which concern the safety of the plaintiff at particular correctional facilities, and given the possibility that plaintiff could very well be returned to those particular facilities while he remains in the custody of the CDOC, this court recommends that plaintiff's claims for declaratory and injunctive relief not be dismissed at this time.

### **Qualified Immunity**

Finally, defendants contend that they are entitled to qualified immunity. When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001). In this case, defendants assert that

Milligan fails to meet the first prong of the qualified immunity

analysis. As discussed above, he fails to demonstrate a violation of a constitutional right. he has no right to any process before transfer to another prison and his retaliation claim fails as a matter of law. Thus, the inquiry with respect to qualified immunity is at an end.

Assuming *arguendo* that Milligan demonstrated a violation of his constitutional rights, the CDOC Employees are nevertheless entitled to qualified immunity because their action did not violate clearly established law. . . .

As outlined above Milligan's claims are legally unsupported. He attempted to create unrest at FLCF and was transferred to AVCF. He complained of custody issues and was again transferred to LCF. His claims of custody issues at LCF were investigated by CDOC staff. He simply cannot provide this Court with any clearly established law demonstrating that the CDOC Employees acted unreasonably in the situation they confronted.

(Docket No. 63 at 14-15).

Based upon the findings above, however, at this stage of the litigation with the record before it, and accepting all well-pled factual allegations in the complaint as true and resolving all reasonable inferences in plaintiff's favor, this court finds that the plaintiff has adequately stated constitutional violations with respect to the transfer by defendant Algien (claim three), plaintiff allegedly being forced into general population by defendant Samu (claim seven), and retaliation by defendant Samu when he allegedly wrote a false disciplinary charge against the plaintiff (claim six). Furthermore, the rights involved in such claims were clearly established, and reasonable persons in the defendants' position would have known their conduct violated those rights. Therefore, defendants are not entitled to qualified immunity on these claims at this time.

## **Claims Against the John Doe Defendant**

Plaintiff's fourth and fifth claims are against defendant John Doe. In claim four, plaintiff contents that Doe transferred him to LCF in retaliation for filing this action, and

in claim five, plaintiff contends that that transfer constituted deliberate indifference in violation of the Eighth Amendment because Doe knew he was placing plaintiff into an environment of potential and substantial risk of harm and imminent danger from violence at the hands of a certain inmate gang member.

Such § 1983 claims are governed by the two-year statute of limitations contained in § 13-80-102, C.R.S.; <u>Workman v. Jordan</u>, 32 F.3d 475, 482 (10th Cir. 1994); <u>Merrigan v. Affiliated Bankshares of Colo., Inc.</u>, 775 F. Supp. 1408, 1411-12 (D. Colo. 1991). More than two years have passed since the time of the alleged events on which the claims against defendant John Doe are based.  Plaintiff claims in the Second Amended Prisoner Complaint that Doe transferred him on May 25, 2006.  (Docket No. 19 at 10). Therefore, the statute of limitations has run with respect to the claims against the John Doe defendant.  It is thus recommended that such claims be dismissed *sua sponte*. <u>West v. Ortiz</u>, 2008 WL 544735 (D. Colo. Feb. 26, 2008).  <u>See</u> <u>Fogle v. Pierson</u>, 435 F.3d 1252, 1258 (10th Cir. 2006) ("A complaint may be dismissed *sua sponte* under § 1915 based on an affirmative defense–such as statute of limitations-'only when the defense is obvious from the face of the complaint and no further factual record is required to be developed."), <u>cert. denied</u>, 127 S. Ct. 675 (2006).  <u>See also</u> <u>Garrett v. Fleming</u>, 362 F.3d 692 (10th Cir. 2004) (Prisoner substitution of named defendants for the original unknown "John Doe" defendants amounted to adding a new party. Complaint dismissed as barred by applicable statute of limitations.  Rule 15(c)'s "relation back" provision because a plaintiff's lack of knowledge of the intended defendant's identity is not a "mistake concerning the identity of the proper party" within the meaning of Rule 15(c)(3)(B)."); <u>Tapia-Ortiz v. Doe</u>, 171 F.3d 150, 151-52 (2d Cir.

1999) ("Although [plaintiff] filed his complaint naming defendant officers as 'John Does' within the . . . statute of limitations period, '[i]t is familiar law that "John Doe" pleadings cannot be used to circumvent statutes of limitations because replacing a "John Doe" with a named party in effect constitutes a change in the party sued.' . . . And even when a suit is brought by *pro se* litigant, 'an amended complaint adding new defendants [cannot] relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.' . . . [Plaintiff's] failure until two years after the expiration of the statute of limitations period to name specifically in his complaint the officers who allegedly violated his rights is therefore fatal to his . . . claim."); Shmueli v. City of New York, 2007 WL 1659210, *4 n.4 (S.D.N.Y. June 7, 2007) ("As the three-year statute of limitations has passed, and Plaintiff has not effectuated service on "John Does 1-10," the Court, *sua sponte*, dismisses the "John Doe" defendants, without leave to amend.").

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion to Dismiss (Docket No. 62) be granted in part and denied in part. More specifically, it is recommended that claims one, two, four, and five in the Second Amended Complaint (Docket No. 19), as well as any claims for compensatory damages, be dismissed with prejudice. It is thus further

**ORDERED** that the plaintiff's Motion Requesting Findings of Fact and Conclusions of Law on the Defendant's Motion to Dismiss (Docket No. 80) is denied as moot.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file**

written, specific objections to the above recommendation with the District Judge

assigned to the case. The District Judge need not consider frivolous, conclusive,

or general objections. A party's failure to file and serve such written, specific

objections waives *de novo* review of the recommendation by the District Judge,

<u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of

both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183

F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir.

1996).


Date:  August 20, 2008                       s/ Michael J. Watanabe
       Denver, Colorado                      Michael J. Watanabe
                                             United States Magistrate Judge