IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00911-WYD-MJW

MICHAEL MILLIGAN,

       Plaintiff,

v.

BILL REED,
NATHAN ALGIEN,
ENDRE SAMU, and
PAUL CLINE,
       in their individual capacities,

       Defendants.

---

**RECOMMENDATIONS ON
PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT (Docket Nos. 169 and 177)
and
DEFENDANTS' COMBINED MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(Docket No. 192)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

       This case is before the undersigned pursuant to an Order of Reference to

Magistrate Judge issued by District Judge Wiley Y. Daniel on July 9, 2007.  (Docket No.

49).

**PLAINTIFF'S ALLEGATIONS**

       The operative pleading is the Second Amended Prisoner Complaint (Docket No.

19) which is brought pursuant to 42 U.S.C. § 1983.  In that pleading, plaintiff

2

summarizes his case as follows:

> This is a civil rights complaint filed by a state prisoner incarcerated within the Colorado Department of Corrections ["CDOC"] against prison officials for the denial of state created due process in the reclassification and transfer of the Plaintiff in an act of retaliation for two formal complaints over conditions of confinement filed with the Associate Warden of the Fort Lyon Correctional Facility.  And the placement of the plaintiff into an environment of known potential and substantial risk of injury and imminent danger, for exercising his First Amendment and Eighth Amendment rights to redress grievances.  Further, for transfer and placement into another environment of known potential and substantial risk of injury and imminent danger for filing the original complaint in this action.

(Docket No. 19 at 4, ¶ 1).

More specifically, plaintiff asserts the following.  On April 19, 2004, the plaintiff and other inmates sent the Associate Warden of Fort Lyon Correctional Facility ("FLCF") a formal written complaint regarding the proposed cancellation of the morning yard and weight pile by the new programs captain, "which raised safety and idel [sic] time concerns."  (Docket No. 19 at 4, ¶ 3).  The following week, on April 27, 2004, plaintiff and other inmates sent another formal written complaint to the Associate Warden regarding inmates organizing an Aryan Brotherhood chapter in the facility, and they gave notice that legal action would be taken against the facility if it was not stopped.  (Docket No. 19 at 5, ¶ 4).

Shortly thereafter, on May 5, 2004, defendant Reed sent a memo to Daryl Vigil and defendant Algien (at CDOC Offender Services) requesting that plaintiff be transferred.  Reed and Algiers circumvented the reclassification procedures in retaliation for plaintiff exercising his First Amendment rights.  Plaintiff was transferred on May 20, 2004, to the Canon Transportation Unit where he was housed until his transfer on May 24, 2004, to Arkansas Valley Correctional Facility ("AVCF").

On May 16, 2006, plaintiff filed his original Prisoner Complaint in this action and sent an advisory copy to defendants Reed and Algien.  In response, on June 6, 2006, defendant Paul Cline of CDOC Offender Services (formerly named as defendant "John Doe") had plaintiff transferred from a level three medium security facility to Limon Correction Facility ("LCF"), a level four close security facility, even though plaintiff was classified as a minimum-restrictive custody level classification.

On June 6, 2006, plaintiff asked defendant Samu, Lou Archuleta, and Daryl Vigil for a facility transfer and protection from inmate Justin Pottberg.  Nevertheless, Samu attempted to move plaintiff into general population with this other inmate, and plaintiff refused.  Plaintiff was placed on pre-segregation status pending charges for disobeying a lawful order to move into general population on June 19, 2006.  Samu filed a false charge stating he had thoroughly investigated and Justin Pottberg was not a justifiable custody issue for the plaintiff when it was documented in the plaintiff's files.  Plaintiff was served with a Notice of Charges on June 23, 2006.  A hearing was held on June 29, 2006, at which plaintiff was found not guilty of the charge.

Plaintiff raised seven claims, and the following six claims remain pending:

**Claim Two** - The May 2004 transfer by Reed and Algien was in retaliation for the two written complaints sent by plaintiff and other prisoners, which was a protected act under the First Amendment;

**Claim Three** - Deliberate indifference in violation of the Eighth Amendment by Algian as a result of that transfer which placed plaintiff into an environment of potential and substantial risk of harm and imminent danger from violence at the hands of gang

4

members who had threatened to kill plaintiff at AVCF nine and twenty-four months previously;

  **Claim Four** - Cline transferred plaintiff on June 6, 2006, to LCF in retaliation for filing this action;

  **Claim Five** - Cline's transfer of plaintiff on June 6, 2006, to LCF constituted deliberate indifference in violation of the Eighth Amendment because Cline knew he was placing plaintiff into an environment of potential and substantial risk of harm and imminent danger from violence at the hands of a certain inmate gang member who was a documented custody issue for the plaintiff;

  **Claim Six** - Retaliation by Samu when he wrote a false disciplinary charge against the plaintiff; and

  **Claim Seven** - Deliberate indifference by Samu when he forced plaintiff into general population with a certain inmate gang member with whom plaintiff had a documented custody issue.

  Plaintiff seeks the following relief:

  A.  Prospective relief in placing the Plaintiff back in the [FLCF] and reinstating his job, status quo, [and] privileges lost due to Defendants' retaliation.

  B.  Declare Defendants' [sic] retaliated against Plaintiff, denied him proper due process and did place Plaintiff into environments in imminent danger in violation of his First, Eighth and Fourteenth Amendment rights.

  C.  Award nominal damages.

  D.  Award punitive damages.

  E.  Award Plaintiff his reasonable costs, attorney fees and witness fees pursuant to 42 U.S.C. 1988, and;

  F.  Grant such other and further relief as may be just and equitable.

(Docket No. 19 at 16).

## MOTIONS FOR SUMMARY JUDGMENT

Now before the court are the plaintiff's two motions for summary judgment (Docket Nos. 169 and 177) and the Defendants' Combined Motion for Summary Judgment and Memorandum Brief in Support of Motion for Summary Judgment (Docket No. 192).  The court has reviewed the motions, the responses thereto (Docket Nos. 194 and 202), and the defendants' reply (Docket No. 214).  In addition, the court has considered applicable Federal Rules of Civil Procedure, case law, and statutes and has taken judicial notice of the court's file.  The court now being fulling informed makes the following findings, conclusions of law, and recommendations.

Rule 56(c)(2) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial."  Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)).  "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . .  These

facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c),

except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149

F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no

reasonable juror could find for the non-moving party based on the evidence presented

in the motion and response." Id.  "The operative inquiry is whether, based on all

documents submitted, reasonable jurors could find by a preponderance of the evidence

that the plaintiff is entitled to a verdict. . . .  Unsupported allegations without 'any

significant probative evidence tending to support the complaint' are insufficient . . . as

are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at

1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v.

York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).  "Evidence presented must be

based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for

summary judgment." Southway, 149 F. Supp.2d at 1274.  "Summary judgment should

not enter if, viewing the evidence in a light most favorable to the non-moving party and

drawing all reasonable inferences in that party's favor, a reasonable jury could return a

verdict for that party." Id. at 1273.

Since the plaintiff is not an attorney, his pleadings have been construed liberally

and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall

v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519,

520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a

claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to

cite proper authority, his confusion of various legal theories, his poor syntax and

sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

### Effect of Plaintiff's Bankruptcy Proceeding

Defendants assert that the plaintiff lacks standing and is judicially estopped from bringing this case as a result of his filing a Chapter 7 bankruptcy petition on December 13, 2004.  On May 3, 2006, plaintiff purportedly mailed to the court the original Prisoner Complaint in this action, and it was filed on May 16, 2006, while his bankruptcy action was pending.  (See Docket No. 3).

"Absent standing, there is no Article III case or controversy," and without standing, "this court does not have subject matter jurisdiction over the claims asserted by [plaintiff]."  Paul v. USIS Commercial Servs., Inc., 2006 WL 2385202, *1 (D. Colo. Aug. 17, 2006) (citing Wilson v. Glenwood Intermountain Prop. Inc., 98 F.3d 590, 592-93 (10th Cir. 2003)).  Plaintiff, as the party who invokes federal jurisdiction, bears the burden of establishing standing.  Id. (citing Rector v. City & County of Denver, 348 F.3d 935, 942 (10th Cir. 2003)).  "Standing must be established by a preponderance of the evidence."  Id. (citing Krim v. Pcorder.com, Inc., 402 F.3d 489, 494 n.21 (5th Cir. 2005)).

Here, the facts that form the basis for Claims Two and Three occurred before the plaintiff filed his bankruptcy petition, and the facts that form the basis for the remaining claims occurred after such filing.  Therefore, Claims Two and Three, but not the rest of plaintiff's claims, became the property of the bankruptcy estate.  Id. (citing 11 U.S.C. § 541) ("Generally, a claim that arises after the debtor's petition was filed [is] not property of the bankruptcy estate.").  While plaintiff claims he advised the bankruptcy trustee of

this action, it is undisputed that the plaintiff did not schedule any of his claims in this case as an asset and failed to amend his schedules after discovering that these claims were not listed as assets.  Assets include "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  It is also undisputed that the Order closing the bankruptcy case abandoned only scheduled property.  As shown by the defendants, the Order specifically states "that all nonexempt property listed by the Debtor and not administered by the trustee is hereby deemed abandoned pursuant to 11 U.S.C. § 545(c)."  (Docket No. 214-2; Defs.' Ex T).  Therefore, the Bankruptcy Court did not abandon Claims Two and Three in this case back to the plaintiff, and thus Claims Two and Three remain the property of the estate.  See Clark v. Trailiner Corp., 2000 WL 1694299, *1 (10th Cir. Nov. 13, 2000) ("When the bankruptcy action is closed, 'properly scheduled' assets not otherwise administered revert 'to the debtor through abandonment under 11 U.S.C. § 554[(c)]' . . . **Assets not properly scheduled remain the property of the bankruptcy estate. . . .  As a result, the debtor loses all rights to enforce any unscheduled legal claim in his own name.**") (emphasis added); Vreugdenhill v. Navistar Int'l Transp.  Corp., 950 F.2d 524, 526 (8th Cir. 1991) ("[I]n order for property to be abandoned by operation of law pursuant to section 554(c), the debtor must formally schedule the property before the close of the case.  It is not enough that the trustee learns of the property through other means; the property must be scheduled pursuant to section 521(1).").  Consequently, this court finds that the plaintiff lacks standing to bring Claims Two and Three and that this court thus lacks subject matter jurisdiction over Claims Two and Three.  It is thus recommended that Claims Two and Three be dismissed.

**Claim Four: Alleged Retaliatory Transfer to LCF by Defendant Cline**

As noted above, on May 3, 2006, plaintiff purportedly mailed to the court the original Prisoner Complaint in this action, and it was filed on May 16, 2006.  In Claim Four, plaintiff asserts that defendant Cline transferred him on June 6, 2006, to LCF in retaliation for filing this action.

Prison officials do not have unbridled discretion to punish an inmate because of his exercise of his First Amendment rights.  "To establish a First Amendment retaliation claim, a plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." Nielander v. Board of County Comm'rs of Republic, Kan., 582 F.3d 1155, 1165 (10th Cir. 2009) (citing Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)).  To establish a claim for retaliation, a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place."  Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998).  A plaintiff must allege "*specific* facts showing retaliation because of the exercise of the prisoner's constitutional rights."  Id. "The inmate must allege more than his personal belief that he is the victim of retaliation." Boyd v. T'Kach, 2008 WL 784398, *5 (D. Colo. Mar. 20, 2008) (quoting Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999)).  "Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because [he] has engaged in protected activity."  Bell v. Pollack, 2008 WL 652324, *4 (D. Colo. Mar. 10, 2008) (citing Peterson, 149 F.3d at 1144).

10

Plaintiff asserts in his summary judgment motion that he was incarcerated within

CCA/Kit Carson Correctional Facility ("KCCF"), a medium security Level III facility, at

the time he filed this case, and shortly after he filed the case, he was transferred to LCF,

a close security Level IV facility.  Furthermore, he asserts that he was a minimum

restrictive classified offender and had received no disciplinary actions against him to

change his security classification at the time, and thus his transfer was allegedly a

regressive transfer without penological reason and one that would not have occurred

but for the retaliatory action alleged in this claim.  He notes that although a prisoner has

no right to remain in any particular prison, the Tenth Circuit has clearly established that

prison officials cannot punish a prisoner for his filing a redress of grievances with a

facility transfer.  (Docket No. 169, citing Frazier v. Dubois, 992 F.2d 560, 561-62 (10th

Cir. 1990)).

Plaintiff asserts that his transfer to a close security facility from a medium security

facility shortly after he filed this action can only be seen as circumstantial evidence of a

retaliatory act here.  He asserts that CDOC classifications are based upon state statutes

and CDOC Administrative Regulation 600-01 that set forth specific criteria for facility

placements, and that in his case, he was not classified as a close security inmate, and

there allegedly was no override requested for his placement into a close security facility

or classification by his case manager at KCCF.  Therefore, plaintiff contends that he has

clearly established that defendant Cline retaliated against him for filing the instant

lawsuit.

In response and in their motion for summary judgment, defendants assert that

plaintiff's allegations of retaliation associated with his facility transfers are completely

unsupported.  They contend that there is no evidence whatsoever that Cline was even aware of this lawsuit when plaintiff was moved to LCF.  Defendants specifically note that Cline was not even identified or named as a party in this case until February 20, 2009 (Docket No. 138), which was two years and nine months after this action was commenced.

This court finds that the evidence presented here does not lead the court to conclude that a jury could reasonably find that defendant Cline retaliated against plaintiff for the exercise of his right of access to the courts.  When a defendant moves for summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. The court acknowledges that "[p]recisely because the ultimate fact of retaliation turns on defendant['s] state of mind, it is particularly difficult to establish by direct evidence." Smith v. Maschner, 899 F.2d 940, 949 (10th Cir. 1990).  Here, however, plaintiff's circumstantial evidence consists merely of temporal proximity between his filing his original complaint, which he allegedly mailed to the court on May 3, 2006, and his transfer over a month later on June 6, and his being transferred from a medium security Level III facility to a close security Level IV facility.  Standing alone, however, and without supporting factual allegations, temporal proximity between an alleged exercise of one's right of access to the courts and a transfer to another facility does not constitute sufficient circumstantial proof of retaliatory motive to state a claim.  See Friedman v.

Kennard, 248 Fed. Appx. 918, 922 (10th Cir. Sept. 25, 2007) (citing Weatherall v.

Scherbarth, 208 F.3d 228, 2000 WL 223576, at *2 (10th Cir. Feb. 28, 2000); Wright v.

McCotter, 172 F.3d 880, 1999 WL 76904, at *1 (10th Cir. Feb. 18, 1999)).  In addition,

given plaintiff's admitted record of security concerns throughout the CDOC, as well as

his demonstrated history of his requesting transfers due to such concerns, plaintiff has

not shown that his filing of his original Prisoner Complaint was the "but for" cause of his

transfer by Cline to a facility with a different security level.  Also, as noted by

defendants, plaintiff has not shown that prior to plaintiff's transfer Cline was even aware

that this case had been filed; Cline was not named as a defendant in the original

Prisoner Complaint.  See Herrera v. Cowley, 89 F.3d 850, 1996 WL 315715 (Table)

(10th Cir. June 11, 1996) (no evidence that the subject of plaintiff's grievance

participated in the transfer decision).  Furthermore, plaintiff has made no showing that

Cline had any personal knowledge of any specific security threats at the receiving

facility.  Plaintiff has merely offered speculation and conclusory allegations that Cline

retaliated against him for filing this lawsuit.  "A plaintiff's subjective beliefs about why the

government took action, without facts to back up those beliefs, are not sufficient to

create a genuine issue of fact."  Nielander, 582 F.3d at 1165.  Because a genuine issue

of material fact has not been raised, summary judgment is appropriate in Cline's favor

on Claim Four.  See Beierle v. Zavares, 2000 WL 757725, *6 (10th Cir. June 12, 2000)

(Plaintiff's retaliation claims were conclusory and thus may be subject to dismissal upon

the defendants filing of a motion to dismiss or properly-supported summary judgment

motion.).

**Claim Five:  Alleged Eighth Amendment Violation by Cline**

13

In Claim Five, plaintiff asserts that Cline's transfer of plaintiff to LCF constituted deliberate indifference in violation of the Eighth Amendment because Cline knew he was placing plaintiff into an environment of potential and substantial risk of harm and imminent danger from violence at the hands of a certain inmate gang member who was a documented custody issue for the plaintiff.  "'[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners.' . . . '[T]he failure to protect inmates from attacks by other inmates may rise to an Eighth Amendment violation if the prison officials [sic] conduct amounts to an obdurate and wanton disregard for the inmate's safety.'"  MacKay v. Farnsworth, 48 F.3d 491, 492 (10th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825 (1994); Northington v. Jackson, 973 F.2d 1518, 1525 (10th Cir. 1992)).

It is well established, however, that the prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  "This subjective standard requires a culpable state of mind on the part of the official. . . .  It is not satisfied by negligence (which, by definition, is an unreasonable act or omission), or even gross negligence, or recklessness as defined by civil law."  Brigden v. State ex rel. Oklahoma Dept. of Corrections, 129 F.3d 130 (Table), 1997 WL 686674, *6 (10th Cir. Oct. 29, 1997) (citing Farmer, 511 U.S. at 836).

Plaintiff asserts in his motion that after he arrived at LCF, he discovered he had been placed with a "custody issue offender, Justin Pottberg," who along with three other white supremacist gang members had threatened plaintiff at KCCF in March 2006.

Plaintiff claims that that incident was fully documented within his file.  In addition, he asserts that the Office of Offender Services for the CDOC was also fully aware of the incident and had documented it within his files there, so Cline would have been fully aware of the incident also.  Plaintiff contends that the fact that Cline, a Classification Specialist for the CDOC Offender Services, placed him into this known environment of potential and substantive risk of harm proves and shows his state of mind was that of deliberate indifference to the plaintiff's safety.  Plaintiff claims in his motion that his Exhibits P through R support his contention that Cline was aware of the incident or would have known of this matter.

Defendants respond and also assert in their motion, *inter alia*, that the evidence does not support the subjective prong of plaintiff's Eighth Amendment claim which requires plaintiff to have evidence of deliberate indifference to a substantial risk of harm to the prisoner.  Defendants assert that the undisputed facts demonstrate that whenever plaintiff raised safety concerns with prison administrators, his allegations were thoroughly investigated, and he was transferred.  Defendants contend there is thus a lack of any evidence whatsoever that any defendant acted with deliberate indifference.

This court finds that one of the plaintiff's specified exhibits, Exhibit R (Docket No. 177 at 58), does not support plaintiff's Eighth Amendment claim of deliberate indifference.  Instead, it shows that Cline made an inquiry about plaintiff's custody issues.  That exhibit is a printout of an e-mail from and to Cline regarding custody issues plaintiff might have.  The e-mail from Cline is dated May 19, 2006, and asks:

> Please obtain copies of all documentation of any conversations between
> Investigator Herdon, Case Management, and anyone else with inmate
> Michael Milligan #42327 concerning his custody issues with any inmates

> at KCCF.  It is my understanding that he was interviewed on more than
> one occasion and stated that he had CIs at KCCF, but could not or would
> not come up with any names.  I need this for documentation in his
> Department File.  Thanks.

(Docket No. 177 at 58).  The response from Edwin Herdon, dated May 30, 2006, states

in pertinent part, "I spoke with Milligan on 4/4/06.  He stated he had custody issues at

KCCC with the 211 crew but did not divulge any names of inmates at Kit.  He did

mention Ralph Dickey, however Dickey is not here."  (Docket No. 177 at 58).

Furthermore, the court does not see the relevance the plaintiff's other two

specified exhibits (P and Q) have to Claim Five.  Exhibit P (Docket No. 177 at 56) is a

Notice of Charges regarding disobeying a lawful order during an incident at KCCF on

March 30, 2006.  It states that plaintiff was informed that he was going to be moved to a

certain pod, and plaintiff stated he was not leaving segregation and was not going to

move until he spoke to the warden.  Exhibit Q (Docket No. 177 at 57) is merely a

Disposition of Charge(s) form related to the incident charged in Exhibit P.  Significantly,

neither document provides any specific information regarding security concerns plaintiff

might have had with respect to any specific inmates or at LCF.

This court finds that the plaintiff has merely offered speculation and conclusory

allegations that Cline was deliberately indifferent when he transferred plaintiff to LCF.

Because a genuine issue of material fact has not been raised, summary judgment is

appropriate in Cline's favor on Claim Five.

### Claim Six and Seven: Claims Against Defendant Samu

In Claim Six, plaintiff contends that after he petitioned prison officials and

defendant Samu with letters and a grievance and talked directly with Samu about being

placed with a custody issue inmate and requesting safety, Samu retaliated by writing a

false disciplinary charge against the plaintiff.  In Claim Seven, plaintiff alleges deliberate

indifference by Samu on June 19, 2006, when Samu attempted to force plaintiff into

general population with a certain inmate gang member with whom Samu knew plaintiff

had a documented custody issue.  When plaintiff refused, Samu had plaintiff placed in

segregation pending a disciplinary charge for disobeying an lawful order.

Defendants assert that these two claims fail because they lack evidentiary

support.  They contend that plaintiff's allegations of retaliation are once again

conclusory and unsupported and should be dismissed.  In addition, they assert the

following with respect to plaintiff's Eighth Amendment claim.  As a result of custody

concerns, plaintiff was immediately interviewed by Samu, who thoroughly investigated

all of the custody issues plaintiff raised, drafted a detailed Memorandum, and concluded

that plaintiff's custody issues were unfounded.  In fact, during his investigation of

plaintiff's alleged custody issues with inmate Pottberg, at plaintiff's request Samu

contacted Intelligence Officer Deanne Pottorff at KCCF.  Pottorff faxed documents to

Samu that did not substantiate plaintiff's claimed custody issue.  Nevertheless, Samu

offered to place plaintiff into Extended Orientation, and plaintiff stated that he would get

back to Samu to advise him if he desired such placement.  Instead of doing so, plaintiff

attempted to manipulate Samu to gain access to a program that he was ineligible for at

another facility.  In addition, the Director of Offender Services in Colorado Springs went

to LCF and met with plaintiff to discuss his custody issues.  As a result, plaintiff was

ultimately transferred to Fremont Correctional Facility ("FCF") for Sex Offender

Treatment as he requested.  However, after arriving at that facility, plaintiff refused such

treatment, and he was then sent back to KCCF to make room at FCF for an inmate who wanted to participate in such treatment.  Plaintiff again claimed he was being retaliated against for this move.  When the CDOC again attempted to move plaintiff back to FCF for treatment, he again alleged retaliation.

This court recommends that summary judgment enter for defendant Samu on Claims Six and Seven because no reasonable juror could find for the plaintiff based on the evidence presented in the motions and responses.  Plaintiff's two claims against Samu are based upon speculation and not supported by the evidence submitted.  More specifically, there is no showing that Samu filed a false report which stated his conclusions regarding plaintiff's custody issue or that he showed deliberate indifference in directing plaintiff to go into general population.  Defendants' Exhibit I (Docket No. 192-10) is a lengthy Internal Classification Confidential Memorandum from Samu, an Internal Classification officer, to Capt. Shane Johnson, a Segregation Supervisor, dated June 12, 2006.  That Memorandum details Samu's interview with the plaintiff on June 9, 2006, Samu's knowledge of documents plaintiff had presented to case manager Cadwaller on June 2 concerning plaintiff's custody issue concerns, and Samu's investigation into plaintiff's custody issues.  The latter included discussion of plaintiff's identification of inmates, including Pottberg, with whom plaintiff arrived at KCCF.  Significantly, Samu notes:

> Inmate Milligan states that the intelligence Officer at KCCF, a Ms. Deanne Pottorff (sp) can confirm his (Milligan) issues with Pottberg and Weeaks.  Faxed documents from Ms. Pottorff indicates that Milligan referenced inmate Pottberg.  Ms. Pottorff states "After investigating I could not find out much information about inmate Milligan ever receiving threats from the inmates named above."  Referring to inmate Pottberg.  After my review of inmate Pottberg's file, who is a member of the 211-Crew, I find

no compelling issue that would warrant Pottberg having an issue with
Milligan.  (See Pottberg's juvenile crime).

(Docket No. 192-10 at 2).  Samu then stated:

> Because inmate Milligan approached me to express his custody
> issues, I informed Milligan of two documents to review entitled "Inmate
> Volunteer Placement" and "Extended/Restricted Privileges Notification."
> Milligan did review the two documents and refused to sign both.  Milligan
> further added that he would "get back with you/me" on Monday 6-12-06 to
> reconsider if he wanted to be placed on Extended Orientation.  As of this
> writing today, 6-12-06 at approx. 4:25 p.m. Inmate Milligan has not
> approached me to confirm placement on Extended Orientation.  Instead, I
> did receive a typed letter outlining our interview from 6-09-06 concluding
> with "*So, if you can come up with my being provided my constitutional
> rights and get me moved to a phase I treatment program, then I will wok
> with you on my housing here at LCF until then.*"  According to Milligan's
> case manager, Mr. Sherwyn Phillip, Milligan is not qualified to participate
> in the phase I Sex Offender Treatment program.
>
> . . .
>
> I've concluded that due to Milligan's crime, he has spent his entire
> incarceration manipulating the system to be constantly moved at his whim.
> I would not make a recommendation to move him.

(Docket No. 192-10 at 2).

Defendants have also provided the report written by Inspector Pottorff, dated

March 17, 2006, which states:

> On the above date and time I Inspector Pottorff had interviewed inmate
> Michael Milligan #42327 regarding his issues.  Inmate Milligan claims that
> the 211 Crew members are going to hurt him.  **At this time I only have
> one confirmed 211 Crew member in the facility and he was out to
> court at the time he claimed custody issues, that inmate was Justin
> Pottberg #112872 (BC101)**.  The other two inmates that he claimed that
> was going to hurt him was Inmates Charles Walrath . . . and inmate
> Patrick Gates . . . .  After placing inmate Milligan on tape with his custody
> issues and listening to his stories at other facilities I began in investigation
> into the case.  I had looked up to see where inmate Milligan had came
> from and contacted the Intel Officer at that facility to make sure that his
> story held truth regarding the 211 Crew members.  Inmate Milligan also
> stated that other inmates kept telling him that he was the spaghetti rapist

and that inmate Ralph Dickey started this rumor.  **After investigating I could not find out much information about inmate Milligan ever receiving threats from the inmates named above**.  I did find out information that he would like to be transferred out of KCCC and wishes to go to Walsenburg Correctional Facility**.  I checked his listed custody issues on DCIS and none of the listed names are at Kit Carson. Inmate Pottberg has left the facility**.  Inmate Milligan has been advised of this and still refused to come out into population.  According to the fax I received from Buena Vista Correctional Facility Intel Officer, that inmate Milligan has done this at many other facilities and wishes to claim custody issues and has been moved**.  I Pottorff can not make him a custody issue unless he has justifiable evidence that he has been threatened for his life while here at Kit Carson, which inmate Milligan can not prove**.  End of Statement.

(Defs.' Ex. K, Docket No. 192-12) (emphasis added).

While at the subsequent disciplinary proceeding additional information was apparently provided by another officer with respect to the custody issue (see Pl.'s Ex. Q, Docket No. 177 at 57), that does not establish deliberate indifference by Samu or that his conclusion based on the information he had was false or made in retaliation.  The undisputed evidence shows that Samu did investigate plaintiff's security concerns, including contacting Inspector Pottorff at plaintiff's request.  There has been no showing that Samu knew of actual facts from which he could infer that a substantial risk of serious harm existed and that he actually drew that inference.  As noted above, the subjective standard of deliberate indifference requires a culpable state of mind on the part of the official.  It is not satisfied by negligence, or even gross negligence, or recklessness as defined by civil law.  Plaintiff's conjecture that Samu's report was false and that Samu was deliberately indifferent is not enough to defeat defendants' supported motion for summary judgment.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that plaintiff's motions for summary judgment (Docket Nos. 169 and 177) be **denied**.  It is further

**RECOMMENDED** the Defendants' Combined Motion for Summary Judgment and Memorandum Brief in Support of Motion for Summary Judgment (Docket No. 192) be **granted**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  February 10, 2010                    s/ Michael J. Watanabe
       Denver, Colorado                     Michael J. Watanabe
                                  United States Magistrate Judge